IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL R. WOLF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:25-cv-00589 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| J.P. MORGAN CHASE BANK N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael R. Wolf, a resident of Nashville, Tennessee, has filed a pro se Amended Complaint (Doc. No. 7) against his prior employer, Defendant J.P. Morgan Chase Bank N.A.[1], alleging failure to accommodate, disability discrimination, retaliation, and hostile work environment in violation of 42 U.S.C. §§ 12112 and 12203, as well as state law claims. (*Id.* at 28-53). Plaintiff also filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application"). (Doc. No. 3).

## I. FILING FEE

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Section 1915 is intended to insure that indigent persons have equal access to the judicial system by allowing them to proceed without having to advance the fees and costs associated with litigation. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948). Pauper status does not require absolute destitution. *Adkins*, 335 U.S. at 339; *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th

---

[1] Defendant's principal place of business is in New York, and Defendant has multiple branches within the state of Tennessee. https://www.chase.com/locator/us/tn (last visited Mar. 17, 2026). Plaintiff was employed by Defendant at a branch in Michigan. (Doc. No. 7 at 5, 7).

Cir. 2001). Rather, the relevant question is "whether the court costs can be paid without undue hardship." *Foster*, 21 F. App'x at 240. Proceeding in forma pauperis is a privilege, not a right, and "[t]he decision whether to permit a litigant to proceed [in forma pauperis] is within the Court's discretion." *Id.*

Plaintiff reports a total monthly income of $3,850.00 from disability and public-assistance payments between himself and his spouse. (Doc. No. 3 at 1-2). Plaintiff reports having $150.00 in cash, $1.13 in one checking account, and $154.66 in a second checking account. (*Id.* at 2). Plaintiff reports $3,645.00 in monthly expenses between himself and his spouse. (*Id.* at 3, 5). Because Plaintiff's Amended IFP Application reflects that he lacks sufficient financial resources to pay the full filing fee without undue hardship, the IFP Application (Doc. No. 3) is **GRANTED**. The Clerk therefore is **DIRECTED** to file the Amended Complaint (Doc. No. 7) in forma pauperis. 28 U.S.C. § 1915(a).

## II. MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL (DOC. NO. 9)

Plaintiff has filed a Motion for Leave to File Document Under Seal ("Motion to Seal") (Doc. No. 9), requesting that the Court seal Plaintiff's Exhibits E and F which contain his detailed medical records, financial account information, and details regarding his mental health crises. (*Id.* at 8).

The public has a strong interest in the accessibility of the information contained in the Court record. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). "The courts have long recognized, therefore, a 'strong presumption in favor of openness' as to court records." *Shane Grp., Inc.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179).

Local Rule 5.03 requires that any party requesting that documents or portions of documents be sealed must comply with Section 5.07 of Administrative Order No. 167-1 and Local Rule 7.01. These rules require the movant to file a motion for leave to file the document(s) under seal and to demonstrate "compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons by specifically analyzing in detail, document by document, the propriety of secrecy, providing factual support and legal citations." M.D. Tenn. Local Rule 5.03(a).

"It would be easy—in the interest of judicial economy, one might say—to grant a sealing motion when no party objects." *Lewis v. Smith*, No. 2:20-cv-3461, 2020 WL 6044082, at *3 (S.D. Ohio Oct. 13, 2020). "But a court should not, indeed cannot, grant a motion to seal simply because it is easy and convenient to do so." *U.S. v. Campbell*, No. 1:19-cr-25, 2021 WL 1975319, at *1 (S.D. Ohio May 18, 2021). Instead, a court evaluating a motion to seal must consider the weighty public interests in judicial transparency and open access to court records. *Shane Grp., Inc.*, 825 F.3d at 305. As the Sixth Circuit recently explained, "a court's obligation to explain the basis for sealing court records is independent of whether anyone objects to it." *Id.* at 306.

Here, because Defendant has not been served yet, it has not had the opportunity to object to Plaintiff's Motion to Seal (Doc. No. 9). In any event, a litigant alleging employment discrimination places their mental or psychological state at issue by claiming they had a mental or psychological disability. *See Mullins v. Toyota Motor Mfg.*, 28 F. App'x 479 (6th Cir. 2002). "Courts in this circuit recognize that 'plaintiffs who place their medical condition at issue waive any applicable privileges or statutory protections that their medical records would have otherwise had.'" *Doe v. Brooks Automation US LLC*, No. 3:24-CV-01284, 2025 WL 936659, at *4 (M.D. Tenn. Mar. 27, 2025) (quoting *Chibbaro v. Everett*, Case No. 3:20-cv-00663, 2022 WL 20402877, at *3 (M.D. Tenn. Mar. 23, 2022)). Plaintiff has placed information such as his disability and ADA

claims at issue here. (Doc. Nos. 7 & 8). Accordingly, sealing Plaintiff's Exhibits E and F is not warranted.

Regarding Plaintiff's concern about his financial information being shared, he makes no arguments in his Motion to Seal regarding that specific financial information. (*See* Doc. No. 9). Plaintiff focuses solely on the medical records. (*See id.*). Therefore, Plaintiff has not met the burden as required by M.D. Tenn. Local Rule 5.03(a).

In short, the reasons provided by Plaintiff in support of his request to seal do not justify non-disclosure of judicial records. "Only the most compelling reasons can justify non-disclosure of judicial records." *In re The Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 476 (6th Cir. 1983) (citing *Brown & Williamson*, 710 F.2d at 1179-80).

Plaintiff elected to initiate this lawsuit. Plaintiff's request to file this case under seal is **DENIED**.

### III. INITIAL REVIEW

A. <u>LEGAL STANDARD</u>

The Court must conduct an initial review and dismiss the complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). Review for whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

B. ALLEGED FACTS

Plaintiff began his employment with Defendant in January of 2019 at Defendant's Novi, Michigan branch. (Doc. No. 7 at 5). Plaintiff disclosed that he has a history of mental health disabilities, including Major Depressive Disorder, Generalized Anxiety Disorder, Panic Disorder, and Attention Deficit Hyperactivity Disorder. (*Id.* at 8). Plaintiff's symptoms were initially exacerbated based on life circumstances outside of the workplace. (*Id.*). Plaintiff determined that he required workplace accommodations to keep his mental health conditions from affecting his job performance. (*Id.*).

In June of 2022, Plaintiff disclosed his mental health disabilities to his supervisor and Branch Manager, Michelle Poulos ("Poulos"). (*Id.*). Plaintiff requested the use of a vacant, enclosed office space within the branch for 1 to 2 days per week in lieu of his cubicle due to the open-office environment causing excessive noise, distractions, and visual stimulation that exacerbated his anxiety and panic symptoms. (*Id.* at 9-10). Poulos immediately approved the accommodation request. (*Id.* at 10). Less than 90 days after approving the accommodation, Poulos rescinded the accommodation, citing the need to be fair to other employees and her understanding that the accommodation was only temporary. (*Id.*). Despite the availability of the requested accommodation and despite Plaintiff providing further reasoning for why the accommodation was

needed, Poulos refused to discuss the matter further. (*Id.*). Plaintiff had no choice but to work in the "open lobby environment" where his symptoms were severely exacerbated. (*Id.* at 11).

Poulos and Financial Advisor Amanda Allie ("Allie") began subjecting Plaintiff to increasingly hostile treatment, which led to mental and physical manifestations. (*Id.* at 11-13). On September 14, 2022, Plaintiff suffered a severe panic attack with suicidal ideation at work that was "precipitated by a confrontational interaction with Financial Advisor Amanda Allie and Ms. Poulos's failure to intervene." (*Id.* at 8). Plaintiff left work, and Poulos called for police intervention within which a welfare check was done. (*Id.* at 9). Shortly thereafter, on September 19, 2022, Plaintiff suffered another severe psychological crisis at work, "again triggered by Ms. Poulos's conduct in presenting false and manipulative accusations against Plaintiff regarding alleged complaints from unnamed coworkers." (*Id.*).

On January 24, 2023, Plaintiff filed a formal complaint with Defendant's Human Resources department. (*Id.* at 18). On January 28, 2023, Defendants retaliated against Plaintiff by suspending him due to a comment he made. (*Id.* at 21-22). On January 30, 2023, Plaintiff filed a supplemental complaint with Human Resources, alleging Poulos retaliated against Plaintiff because of his prior Human Resources complaint. (*Id.* at 22). On February 25, 2023[2], Plaintiff resigned from his position. (*Id.* at 25).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 12, 2023, alleging violations of the ADA and civil rights laws.

---

[2] In his Charge of Discrimination form filed with the EEOC, Plaintiff listed "02/28/2023" as the latest date discrimination took place. (Doc. No. 7-2 at 5). Plaintiff's filing with the EEOC is untimely for the reasons set forth below, regardless of whether the last date on which discrimination took place was February 25, 2023 or February 28, 2023.

(*Id.* at 26). The EEOC issued Plaintiff a notice of right-to-sue letter on February 28, 2025. (*Id.* at 27; Doc. No. 7-2).

C. ANALYSIS

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. Title VII proscribes certain discriminatory employment practices. Before filing suit in federal court under Title VII, a plaintiff must first timely file a relevant charge of discrimination before the Equal Employment Opportunity Commission or corresponding state agency. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). The purpose of this requirement is to allow the EEOC the opportunity to convince the parties to resolve the matter by voluntary settlement rather than through litigation. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731-32 (6th Cir. 2006) (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984)).

A plaintiff alleging discrimination must either file a charge with the EEOC within 180 days of the alleged discrimination or file with the appropriate state agency within 300 days if the state is a deferral state. 42 U.S.C. § 2000e-5(e)(1); *see Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). "Michigan, the state where this case arises, is a deferral jurisdiction, and the Michigan Department of Civil Rights (MDCR) is the applicable agency in that state for investigating unlawful employment practices. *See* 29 C.F.R. § 1601.13." *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827 (6th Cir. 2019).

If a charge is not first filed with the appropriate state or local agency prior to being filed with the EEOC (or is not filed contemporaneously with both the appropriate state agency and the EEOC), then the 180-day timeframe applies. *See El–Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 463 (6th Cir. 2006) (applying the 180-day timeframe where "nothing in the record indicat[ed]

that [the plaintiff] instituted proceedings with a state or local agency" prior to or contemporaneously with filing a charge with the EEOC).

If the EEOC finds that the charge has a reasonable basis, it will issue to the plaintiff a notice of right to sue. 29 C.F.R. § 1601.28(b). Upon receipt of a notice of right to sue, the employee has 90 days in which to bring a federal action alleging a violation of Title VII. 42 U.S.C. § 2000e-5(f)(1).

Administrative exhaustion (that is, completing the required process of seeking a remedy or resolution before the applicable administrative agency, here, the EEOC) thus involves (1) timely filing with the EEOC a charge of employment discrimination and (2) receiving and acting upon a statutory right-to-sue notice. *Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006) (citing *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)).

Plaintiff received a Notice of Right to Sue letter (Doc. No. 7-2 at 2) from the EEOC on February 28, 2025 and timely filed his original Complaint (Doc. No. 1) with this Court on May 27, 2025, within the 90-day timeframe as required by 42 U.S.C. § 2000e-5(f)(1). The Court, however, cannot determine if Plaintiff filed his charge of employment discrimination with the EEOC in a timely manner because it is unclear whether Plaintiff first filed a charge of discrimination with the appropriate state agency.

In Plaintiff's EEOC Charge of Discrimination form (Doc. No. 7-2 at 5-6), Plaintiff indicates, "Michigan Department of Civil Rights" as the "State or local Agency." (*Id.* at 5-6). Plaintiff does not indicate whether he did in fact file with the appropriate state agency, and he has submitted no documentation reflecting as much. If Plaintiff filed a charge with the appropriate state or local agency prior to, or contemporaneously with, the filing of his charge with the EEOC,

the 300-day timeframe would apply. Until the Court receives such information from Plaintiff, the Court cannot make a determination as to the timeliness of Plaintiff's EEOC filing.

Accordingly, taking into account his pro se status, Plaintiff is **DIRECTED** to file, within **30 DAYS** of the date this Order is entered, an amended complaint clarifying whether he did file a charge of discrimination with the appropriate state agency. If he did, Plaintiff must indicate the date of such filing and must provide the corresponding documentation of such. Plaintiff's submissions must be received by that time.

Plaintiff is forewarned that, should he fail to comply with the Court's Order within the time frame specified, or fail to request an extension of the 30-day period for compliance before it expires, any limitations period applicable to this action will no longer be tolled and the case may be dismissed.

Failure to keep the Court apprised of any change in Plaintiff's address of record may also result in dismissal. M.D. Tenn. L.R. 41.01(b).

Resources for pro se litigants are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE